IN THE MATTER OF: A STATE GRAND JURY INVESTIGATION INTO CORRUPTION IN THE LINDENWOLD NEW JERSEY AREA.

Superior Court of New Jersey
Appellate Division

Argued August 11, 1975—Decided August 25, 1975.

164

Before Judges LORA, CRAHAY and BISCHOFF.

*Mr. Lawrence G. Goodman* argued the cause for appellants (*Messrs. Goodman & Stoldt,* attorneys; *Mr. Lawrence G. Goodman and Mr. Richard D. McLaughlin* on the brief).

*Mr. Howard Allen Cohen,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Howard Allen Cohen* on the brief).

PER CURIAM. These appeals, consolidated and accelerated for disposition, are addressed to two orders entered in the Law Division anent proceedings initiated under the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, *N. J. S. A.* 2A:81–18 *et seq.* (hereafter the uniform act).

We need not detail the entire factual and procedural background, the essentials being that —

In December 1974, during the course of an inquiry into alleged corruption in the Borough of Lindenwold, one Richard Kahr testified at a public hearing conducted by the New Jersey State Commission of Investigation (SCI). Kahr, under a grant of testimonial immunity, recounted instances of bribery in which he had participated in connection with the development of two housing projects, "Pine-Lake" and "Meadowview," in Lindenwold in 1971.

The record reflects that as to "Pine-Lake" and "Meadowview" Kahr operated through limited partnerships, he and another being general partners and appellants — three New York attorneys — being limited partners and, through their New York law firm, counsel to the partnerships.

Included in Kahr's testimony before the SCI was the statement that he had previously paid $4,000 to appellants' law firm, ostensibly as fees, and that appellants had returned the money to him to be used as part of a bribe. Kahr testified that appellants were aware of the bribes and in essence agreed to them. (It is appellants' position throughout that "they had absolutely no knowledge respecting Mr. Kahr's alleged misdeeds * * *.")

In December 1974 the SCI, by resolution, referred the matter to the Attorney General, and State Grand Jury proceedings were commenced in January 1975 which have resulted in at least six indictments to date. The State contends that during the grand jury investigation it sought to obtain appellants' voluntary cooperation by negotiation with their New York counsel but that it was fruitless.

In any event, on May 8, 1975 and pursuant to the uniform act, the Attorney General addressed a petition to Superior Court Judge Schoch, Assignment Judge of the Superior Court, the judge assigned by the Chief Justice of the New Jersey Supreme Court to administer the affairs of the State Grand Jury. That application sought a certifica-

tion from Judge Schoch to a judge of a court of record in the State of New York that the testimony of appellants and the production of specified records of their law firm and three corporations in which they were allegedly involved were necessary and material to the ongoing State Grand Jury investigation. The certificate issued and an order to show cause to revoke it was denied. Appeal to us therefrom was taken on May 29, 1975. On June 16, 1975 the Supreme Court of New York ordered appellants to produce the records of their law firm for grand jury examination but only after "an appropriate New Jersey court" passed upon appellants' claims of constitutional privilege. (We have not recited all of the procedural undertakings — including stays by us — not deeming them necessary to our disposition, noting only that a consent order entered in the New York Supreme Court on June 12, 1975 directed production before the State Grand Jury of specified corporate records in appellants' control.)

As contemplated by the New York court, Judge Schoch conducted a hearing on June 19, 1975 at which one of the appellants testified, and found no privilege in them warranting the nonproduction of the law firm's records relying principally on *Bellis v. United States,* 417 *U. S.* 85, 94 S. Ct. 2179, 40 L. Ed. 2d 678 (1974). It was directed that specified documents be produced before the grand jury. On appellants' application Judge Schoch stayed the effect of the ruling pending an expeditious motion to the New York court on appellants' "question of hardship."

More than "hardship" was considered, however. During the pendency of these appeals and in response to this last application Judge Evans of the New York Supreme Court noted appellants' claim of privilege against self-incrimination and that

Respondents [appellants herein] have objected on various grounds. It was stipulated that at this time their personal presence for questioning in New Jersey was not needed but the Attorney General

sought their books and records. Respondents claimed that this would violate their privilege against self-incrimination.

*Bellis v. U. S.*, 417 *U. S.* 85, 94 *S. Ct.* 2179, 40 *L. Ed.* 2d 678 decided that there are circumstances under which there is no privilege with respect to partnership books and records, leaving that issue to be decided factually in each case. Since New York law leaves the decision of privilege to the demanding state, * * *, that question although raised here by respondents, was ordered by this Court to be decided there. After a hearing held for that purpose on June 19, 1975 the Superior Court of New Jersey sitting in Mercer County, held that there was no such privilege in this case.

\*    \*    \*    \*    \*    \*    \*    \*

Respondents have now applied for a hearing to determine whether or not the production of the books and records constitutes such a hardship, claiming that the decision as to privilege, under the *Bellis* doctrine, would be decided differently if the decision were to be made in New York.

The rule of law set forth in *Bellis* is clearly one that should have national application; and while it is clear that a State, for itself, may create standards which give its residents greater protection and rights than is required as a national Constitutional minimum, there is no state policy which requires that books and records should have a greater protection in New York than is required by the Federal Constitution and there are no cases which suggest that the scope of the constitutional privilege against self-incrimination is greater in New York than it is elsewhere.

Respondents argue that the extent of the immunity given to a witness who is compelled to testify before a grand jury in New York is transactional immunity, whereas in New Jersey it is use immunity; and that, therefore, there is a hardship imposed on the respondents if they are required to testify in New Jersey. That may be so where application is made for them to appear and testify themselves; but since it has been decided by a Court of competent jurisdiction that their books and records do not have immunity at all, the question of hardship as to the books and records does not exist.

There is, therefore, no purpose to be served in granting the application to hold this hearing, which is sought in effect to grant a retrial of a matter already decided by a Court of competent jurisdiction in a sister state, and the application is therefore denied.

Appeal No. 3044–74 is addressed to Judge Schoch's order denying appellants' motion to revoke his certificate of materiality, and Appeal No. 3374–74 seeks to reverse his order requiring appellants to produce their law firm records before the State Grand Jury. As noted, because of the obvious exigencies of time we have consolidated them and accelerated briefing, argument and disposition.

In seeking to overturn the challenged orders appellants essentially urge that

1. There was no factual basis for the Law Division's determination that the sought testimony was material to the grand jury's investigation;
2. Appellants "must be deemed to be targets of the Grand Jury inquiry, and as such cannot be compelled to attend and testify ❊ ❊ ❊":
3. There was no warrant for the certificate since appellants will not enjoy the same immunity in New Jersey as they would in New York, and
4. Appellants' privileges against self-incrimination under the United States, New York and New Jersey Constitutions extend to their law partnership business records.

We have reviewed the asserted points of appeal against the record, perceive no merit in them warranting reversal and affirm.

1. We view appellants' challenge to the sufficiency of the basis for the issuance of the certificate of materiality by Judge Schoch basically as an attack on the credibility and probability of Kahr's testimony. Their arguments simply do not persuade.

█ The uniform act, widely adopted in United States jurisdictions, was enacted in aid of comity between states to assist in the orderly and effective administration and prosecution of criminal conduct. *In re Saperstein,* 30 *N. J. Super.* 373, 380 (App. Div. 1954), certif. den. 15 *N. J.* 613 (1954), *cert.* den. 348 *U. S.* 874, 75 S. Ct. 110, 99 *L. Ed.* 688 (1954). The act is entitled to enjoy liberal construction to achieve its aims.

█ █ Clearly here, the ongoing State Grand Jury is a necessary and legitimate inquiry into purported municipal corruption. As such it may pursue every meaningful clue and avenue of investigation. *United States v. Calandra,* 414 *U. S.* 338, 94 *S. Ct.* 613, 38 *L. Ed.* 2d 561 (1974). In our view, this principle governs the instant matter, including evaluating, testing or buttressing Kahr's testimonial asser-

tions against parties under investigation. Plainly and simply, nothing in the record warrants disturbing the trial judge's determination of materiality, as accepted by the Supreme Court of New York, of the evidence sought.

2. Contrary to appellants' claims the record in its present posture does not make evident that they are targets of the State Grand Jury. *In re Addonizio*, 53 *N. J.* 107 (1968).

■ Between January 1975 and the issuance of Judge Schoch's certificate in May negotiations were conducted for appellants' cooperation. Prior to the grant of the certificate they allege that a Deputy Attorney General threatened them with indictment unless they corroborated Kahr's testimony. The purported motivation for this tactic was to preclude their testimony as rebuttal witnesses to Kahr's assertions during the trials of others. This assertion is denied by the State. We deem that the issue is collateral, not requiring resolution since the record clearly and specifically reflects that the State has several times addressed, through the Attorney General's office to the courts of New Jersey and New York, that appellants are not targets of the investigation. In view of this we reject their argument that

> \* \* \* there is a clear probability that appellants will be indicted for either what they tell the Grand Jury or what they don't tell the Grand Jury if they are required to appear and testify. \* \* \*

We do not know now whether any of the appellants will testify or claim a privilege. If the latter, we do not know if the claim will be honored as having a legal basis. It would be singularly inappropriate to indulge in speculation. Their stated fears are premature. In view of the State's recorded representations we are not persuaded that at this posture they are "at least potential defendants". We do

> \* \* \* accept the representations of the Attorney General, made by three of his deputies, that appellants' cooperation is being sought in good faith in the capacity of witnesses and not targets. \* \* \*

See *In re Pitman*, 26 *Misc.* 2d 332, 201 *N. Y. S.* 2d 1000 (1960). Compare *In re Mayers*, 9 *Misc.* 2d 212, 169 *N. Y. S.* 2d 839 (1957).

■ ■ 3. We view appellants' arguments that the difference in kind between New York's grant of immunity ("transactional" — *McKinney's C. P. L.* §§ 190.40, 190.35 and 50.10) and New Jersey's ("use and fruits" — *N. J. S. A.* 2A:81-17.3) as both premature and frivolous. We observe again that we do not know what stance appellants will take if called before the State Grand Jury or if indeed immunity will be offered. See *State v. Jennings*, 126 *N. J. Super.* 70 (App. Div. 1972), certif. den. 60 *N. J.* 512 (1972). In any event, we know of no authority nor does justice or reason mandate that there be an identity of procedural or substantive rules in participating states in order for uniform acts to be applied. The act itself, § 5, mandates only interpretation and construction effectuating its general purpose. *In re Superstein, supra* 30 *N. J. Super.* at 380. The highest authority instructs that constitutionally there is no requirement for a grant of transactional immunity before a witness may be compelled to testify. *Kastigar v. United States*, 406 *U. S.* 441, 92 *S. Ct.* 1653, 32 *L. Ed.* 2d 212 (1972). The arguments advanced on this point present no basis for revoking the certificate of materiality.

■ 4. *Bellis v. United States, supra* is complete authority for rejecting appellants' contention that their law firm records enjoy a privilege against self-incrimination. Judge Schoch's essential finding, after hearing the testimony of one of the appellants, that their law firm was an organizational structure not personal to any of them, was well grounded in the record. In our view, any other conclusion would have been contradicted. We see pure sophistry in appellants' contention that since, as partners they are unanimous in their claim of privilege, *Bellis* is inoperative. So too, their assertion that their multifaceted per-

sonal relationships "carried over into the business aspect of their association." We see no need to discuss the authorities employed by appellants on this point. They are patently inapposite.

Accordingly, stays previously ordered are vacated and the orders under review are affirmed.